(92 App. Div. 178.)

### PRITCHARD v. EDISON ELECTRIC ILLUMINATING CO.

(Supreme Court, Appellate Division, First Department.   March 11, 1904.)

1. CONSOLIDATION OF ACTIONS—ACTION AT LAW—EQUITY—EFFECT.

Where an action seeking to restrain the maintenance of a nuisance and for damages and a subsequent action by the same plaintiff against the same defendant for damages accruing after the commencement of the first action were consolidated and transferred to the law side of the court, the effect was to waive the equitable relief asked for in the first action, and to make the consolidated action one to recover damages caused by the maintenance of the nuisance, to be tried on the allegations of the two complaints relevant to such an action.

2. NUISANCE—ACTION BY LESSEE.

A lessee of premises is entitled to recover damages sustained by him during his tenancy from the maintenance of a nuisance on adjoining property.

3 SAME—OPERATION OF MACHINERY.

In an action for damages sustained by a hotel keeper owing to the operation of an electric lighting plant on property adjoining his hotel, plaintiff's evidence tended to show that the machinery produced a vibration of his building; that dirt and cinders came into the rooms; that noise and bad odors invaded the premises; and that the income derived from rental of rooms had decreased since the plant was established. At the time the

plant was erected the neighborhood was a residential one. *Held*, that the jury were warranted in finding that the plant was a nuisance.

4. SAME—DAMAGES.

In an action by a lessee of a hotel for damages resulting from the operation on adjoining premises of an electric light plant which was a nuisance, plaintiff was entitled to recover, as the injury to the usable value of the property, the diminution in room rent of the hotel, and the loss in consequence of the failure to supply refreshments to those whose presence was prevented by the nuisance.

5. SAME—INSTRUCTIONS.

It was proper to refuse to charge that the measure of damages was the actual diminution in rental value, since it limited the plaintiff to a recovery of the actual diminution of rental value, instead of to the diminution in the usable value of the property to the plaintiff caused by the nuisance.

6. SAME—CARE ON THE PART OF DEFENDANT.

The operation of an electric light plant in a residential neighborhood was no less a nuisance because no care in its operation could render it less obnoxious.

7. SAME—EVIDENCE.

In an action for damages from the maintenance of an electric lighting plant on premises adjoining plaintiff's hotel, on the ground that it was a nuisance, an inspector of the board of health testified for plaintiff that he had visited the plant, and testified as to the results of his inspection of property in the neighborhood, and on cross-examination stated that he went there because of the petition of property owners. *Held*, that it was not error to admit the petition in evidence, the court stating on objection to it that it was admitted merely for the purpose of showing what it was, and not as proof of its allegations.

8. SAME—INSTRUCTIONS.

If the defendant had wished to have the jury instructed that they were not to consider the petition as any proof of the facts therein stated, it should have made a request for such an instruction when the case was finally submitted.

9. SAME—EVIDENCE.

It was proper to admit evidence as to the obstruction of the street by defendant by ashes and dirt in front of plaintiff's premises.

Appeal from Trial Term.

Action by Myron T. Pritchard, as executor, against the Edison Electric Illuminating Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Henry J. Hemmens, for appellant.
Frank M. Hardenbrook, for respondent.

INGRAHAM, J. The plaintiff's testator commenced this action, alleging that he was the lessee of certain premises in the city of New York under a lease dated April 19, 1890, for the term of five years, which expired on the 1st day of May, 1895, and which was renewed by a lease dated April 19, 1895, for a further term of five years ending on the 1st day of May, 1900; that there was maintained by the plaintiff upon said premises during that period a hotel and Turkish bathing establishment; that since the leasing and occupation of said premises by the plaintiff the defendant has acquired certain property

adjoining the hotel occupied by the plaintiff, and caused to be built upon said property a large building, with numerous steam boilers, engines, and dynamo electric machines, for the purpose of generating electricity to be supplied by the defendant to the general public for lighting purposes; that in June, 1890, the defendant commenced to operate said machinery, and that the operation of the machinery and building upon the defendant's property is a nuisance, which has caused the plaintiff injury, to his damage in the sum of $70,000; and the plaintiff asked for an injunction to restrain the defendant from continuing such nuisance and for his damages.

The defendant interposed an answer, and subsequent thereto the plaintiff's testator died, and the action was continued in favor of this plaintiff as executor of the plaintiff in the original action. This order was entered on the 3d day of November, 1902. On May 12, 1900, the plaintiff's testator commenced a second action, realleging the same facts, alleging the continuance of the nuisance from the time of the beginning of the first action, and asking to recover the sum of $10,000 damages therefor. To this complaint the defendant interposed an answer, and on the death of the plaintiff in that action the second action was also revived in favor of this plaintiff as his executor. Subsequently, on the 14th day of January, 1903, upon motion of the plaintiff in the two actions, an order was made at Special Term transferring the action in equity "to the law side of this court for the trial of issues of fact by a jury," and further consolidating the two actions, "and that the said actions be tried as one action in said court for the trial of issues of fact by a jury, and that the trial of said consolidated action proceed in the regular order at such time as said action No. 2,017 upon the law side of the said court is reached for trial without any new note of issues being filed or a new notice of trial being served." No appeal was taken from that order, and no new complaint was required to be served.

Upon the consolidation of these two actions as an action at law, the legal effect was to waive the equitable relief asked for in the first action, and to make the consolidated action one to recover damages caused by the maintenance of the nuisance, to be tried upon the allegations of the two complaints relevant to such an action at law for the recovery of damages. Upon the cause coming on for trial before a jury, the court called the attention of counsel to the condition of the pleadings, there being two complaints in one action, and then the defendant stated as an objection that there was no pleading before the court which raised the issues under the order of consolidation, and, claiming that the defendant should have an opportunity to answer, moved that the cause be sent back to the general calendar, so that a complaint could be served. This motion the court denied, to which the defendant excepted. The defendant does not rely upon this exception on this appeal, and it would seem that the defendant had waived the objection by not appealing from the order of the Special Term, which directly consolidated the equity action with the common-law action, and directed that they should subsequently proceed as one action.

The total damages demanded by the plaintiff in the two actions was $80,000. The jury found a verdict for the plaintiff for $16,000. The

plaintiff introduced evidence tending to show that the operation of the machinery in the defendant's building produced a vibration and shaking of the building occupied by the plaintiff; that dirt and cinders came from the defendant's building into the rooms of plaintiff's building when the windows were open; that there was much noise, smoke, dirt, and bad odors from the defendant's building which invaded the plaintiff's premises; and that these conditions had increased as the defendant's business increased and more machinery was operated. There was also evidence of a decline in the rental value of the premises since this use by the defendant of its property; that about the year 1893 the income derived from the rental of rooms in plaintiff's hotel began to decrease; and that during the rest of the time, up to the trial, the income received from the rent of rooms was subsequently decreased from the income received before the establishment of the defendant's business. The defendant introduced evidence tending to show that the vibration caused by its machinery was very slight; that there was no smoke or dirt or soot from the defendant's building which penetrated the plaintiff's premises; and that the decrease in the rental value of the premises in the neighborhood was caused by a financial panic, which came in 1893, and other causes not connected with the occupation of the defendant's building.

Upon this evidence the trial court submitted to the jury the question as to whether the operation of the defendant's station was a nuisance— "that is, whether it was an unreasonable interference with the rights of this neighboring householder in the ordinary enjoyment of his property"—and instructed the jury that "ordinarily a person may use his own premises as he pleases, and for any lawful business, but his use must be a reasonable one, in order that he may not injure his neighbor, and if, through some unusual use of the premises, actual discomfort and annoyance result to his neighbors, greater than the ordinary and reasonable use of the premises would cause, the person who chooses to use his property in this way must pay his neighbor for the injury which he does the latter." And upon the subject of damages the trial court charged: "If the defendant's power station as operated was a nuisance, and lessened the profits of this hotel, the damages which the plaintiff may recover are to be limited to the actual loss of profits, such as you find from the evidence were caused to be lost through the defendant's acts in the use and operation of the power station;" that "any award to be made to the plaintiff should be limited to so much of the loss as was occasioned by the acts of the defendant." There was no exception to the charge, but the defendant submitted 37 requests to charge, one of which the court charged, and refused the others, to which the defendant excepted.

The plaintiff's testimony showed a decrease in the amount received from room rent in the year 1898 as compared with the year 1897, of about $10,000 a year, and the jury have found that the total damage sustained by the plaintiff in consequence of the defendant's operation for the period between November 22, 1892, and November 1, 1898, was $16,000, a little over $2,600 per year. The defendant strenuously insists that this verdict was against the weight of evidence, and that the damages are excessive. That the plaintiff was entitled to recover the

damage sustained by him as the lessee of the premises during the period that he was in possession as such lessee is now settled by the Court of Appeals (Bly v. Edison Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500); and the substantial questions for the jury were, did the defendant maintain a nuisance, and, if so, what were the plaintiff's damages? A nuisance is defined in the Bly Case as "an unreasonable, unwarrantable, or unlawful use of one's own property to the annoyance, inconvenience, discomfort, or damage of another"; and, accepting this definition, we think the evidence justified the jury in finding that the use to which the defendant had put the premises was an unreasonable, unwarrantable, or unlawful use, to the annoyance, inconvenience, discomfort, or damage of the plaintiff. This building had been in use as a hotel for years before the defendant acquired this property, and erected upon it a plant for generating electricity. While supplying the public with electricity, light, and power, it was none the less a private corporation, organized for private gain, and it voluntarily selected the premises in question upon which to conduct its operations; and the question whether the operation of such a plant would be inconsistent with the general character of the neighborhood, and such as to necessarily injure the use to which the adjoining property was put, was the serious question in determining whether the use to which the defendant put its property was unwarrantable and unreasonable. There are many parts of New York where a building devoted to such a use would manifestly have no injurious effect upon the adjoining property, and there are many localities where such a use would produce great injury, and entirely destroy the value of adjoining property as used by its owners. When the defendant acquired its property in Twenty-Eighth street, the neighborhood was residential, and the owner of property upon this street had no right to there erect a structure and apply it to a use which was inconsistent with the general use of property in the neighborhood, and which would necessarily cause those owning and in possession of adjoining property an injury; and when the use of property is spoken of as unwarrantable and unreasonable, it necessarily relates to the character of the locality in which the property is situated, considering the location, and the use to which the neighboring property was put. It requires but little evidence to show that the use to which the defendant devoted this property was one which would necessarily be an annoyance to occupants of adjacent property, and which would seriously affect the usable value of that property to the occupants; and, that being so, it would seem to follow that the person devoting his property in such a locality to such a use was maintaining a nuisance. We think, therefore, that the finding of the jury that the defendant was maintaining a nuisance was sustained by the evidence.

The next question is as to the proper measure of damages, and this we have lately had before us in the case of Bates v. Holbrook, 89 App. Div. 548, 85 N. Y. Supp. 673. We there held that the measure of damages was the injury to the usable value of the property which was caused by the nuisance; that in case of a hotel such usable value could be determined by the decrease in the rent of the rooms, and the loss in the business of the hotel; and that this rule is not in violation of the principle that in actions of this character loss of profits is not

recoverable. It follows that the plaintiff ·was entitled to recover, as the injury to the usable value of the property, the diminution in room rent of the hotel, and the loss in consequence of the failure to supply refreshments to those whose presence was prevented by the nuisance. This being the rule, it was not improper for the court to charge that the damages which the plaintiff may recover "are to be limited to the actual loss of profits, such as you find from the evidence were caused to be lost through the defendant's acts in the use and operation of its power station." There were no profits alleged or proved except such as were directly connected with the room rent and the restaurant, and the defendant did not except to this charge.

We are then to determine whether the court refused to charge any request upon this subject to which the defendant was entitled. The first request that the court refused upon the question of damages was the seventh, which is that "the measure of damages applicable to a case of this kind is the actual diminution in rental value by reason of the defendant's acts." This request was plainly erroneous, in· that it limited the plaintiff to a recovery of the actual diminution of rental value, instead of to the diminution in the usable value of the property to the plaintiff caused by the nuisance. The defendant also requested the court to charge "that loss of income from business is not provable as an element of damage." This, if we are right as to the measure of damage applicable to such a case, was not correct, and these are the only two requests to charge which bore on the question of damage. There was no error, therefore, in the charge of the learned trial judge or in his refusal to charge upon this question that would justify us in reversing the judgment.

The other requests to charge which were refused we think were all properly refused. The use to which the defendant put this property was no less a nuisance, because no care in the operation of the machinery supplied would prevent it from being one. It is not alleged that the defendant negligently conducted its business, or that the machinery was not proper for that purpose, but that the generation of electricity upon these premises by proper machinery, carefully used, necessarily caused the vibration, dirt, dust, cinders, and odors that made the conduct of such a business in such a locality a nuisance; and, the jury by their verdict having found that it was such a nuisance,. it was no defense to prove that such a business could not have been conducted in such a locality without its being a nuisance.

The other propositions presented do not require discussion, as we are satisfied that the defendant was not entitled to have any of them charged.

There are many exceptions to evidence scattered through this record, some of which are relied upon by the defendant upon this appeal. The most serious is that presented to the admission of a petition to the health department of the city of New York asking that this defendant's power ·house be condemned as a public nuisance, and removed to such locality as would not be injured thereby. An inspector of the board of health was called as a witness by the plaintiff, and testified that he had visited the defendant's power house in West Twenty-Sixth street, and the plaintiff's hotel in the same street. He testified as to

the results of his inspection of the plaintiff's premises and the other property in the neighborhood. Upon cross-examination he testified, in answer to questions by counsel for defendant, that he went there in pursuance of a complaint that had been made against the operation of this station; that the complaint was a petition signed by a number of the property owners in the neighborhood, and that he based his report to the board of health upon his own investigation of the premises; that he had the original complaint with him at the time he was examined, which was filed with the board of health; whereupon counsel for the plaintiff asked the witness to produce the petition, and offered it in evidence, which was objected to, the court saying: "I will let the petition in, simply for the purpose of showing what it was, not as proof of any of the facts which the petition itself contained. It is simply as showing you have asked about the petition, and the petition itself is in writing." For this limited purpose it was admitted. I do not think it was incompetent for that purpose. The result of the witness' examination having been detailed by the witness, the defendant brought out the fact that such examination was based upon a petition or complaint which had come to the health department, to investigate which the witness made the examination. The nature of the examination, its thoroughness, and the object that the witness had in view in making it, were material for the jury in determining the weight to be given to his evidence, and it was competent for the plaintiff to show just what that complaint was, that the jury could judge of the thoroughness of the examination, and the effect to be given to his testimony as to what he discovered. The court carefully limited the admission of this petition for that purpose, and, if the defendant had wished to have the jury instructed that they were not to consider that petition as any proof of the facts therein stated, it should have made a request for such an instruction when the case was finally submitted.

The defendant also objects to evidence as to the use of the street by the defendant; but I think this evidence, in the connection in which it was given, was not incompetent, and the court expressly charged the jury at the request of the defendant that no damages could be awarded to the plaintiff by reason of the obstruction of the sidewalk or road temporarily for business purposes, or for the purpose of taking machinery or appliances into the defendant's building. The defendant, maintaining a nuisance, was liable for the damage that the nuisance caused, and any obstruction of the street by the defendant by ashes or dirt in front of the plaintiff's premises was properly to be considered by the jury. There was no evidence given to which objection was made to any use of the street in front of the defendant's premises by the defendant. The other objections I do not think at all material or present any error which would justify us in reversing the judgment.

Upon the whole case, I think the testimony fairly sustained the verdict of the jury, and that the judgment and order should be affirmed, with costs. All concur.