REGAN, Judge.
Plaintiffs, Mr. and Mrs. Philip J. Ragusa, owners and occupants of the property designated by the municipal number 228 N. Alexander Street instituted this suit endeavoring to enjoin the defendant, American Metal Works, Inc., a neighbor,[1] from operating its business in such a noisy manner as to constitute a nuisance.
Defendant pleaded the exceptions of no right or cause of action, which were apparently overruled, and then answered conceding that the operation of its machinery causes a normal amount of noise but asserted in defense thereof that the various noises emanating from its plant do not create a condition which falls within the category of a legal nuisance and therefore plaintiffs’ reqeust for injunctive relief should be dismissed.
From a judgment in favor of plaintiffs enjoining defendant from operating its business so as to “cause the emission of any loud, irritating, screechy or similar noises, and which would disturb or interfere with the normal rest, relaxation or sleep of the residents in the vicinity, between the hours of seven o’clock p. m. and seven o’clock a. m.,” the defendant then prosecuted this appeal to the Supreme Court, which ordered the record transferred here.[2]
The trial judge made a thorough analysis of this case in his written reasons for judgment which, in our opinion, fully encompassed the subject posed for our consideration and the result which we have agreed should be reached.
“Plaintiffs seek to enjoin defendant from continuing an alleged noise nuisance emanating at night from defendant’s metal manufacturing works across the street, contending that such noises disturb their rest and sleep.
“The issue is whether the noise from defendant’s plant is sufficient to annoy people of normal sensibilities and reactions and, if so, whether the Court should enjoin their continuance or hold that plaintiffs and other neighbors must supinely submit thereto.
“Defendant’s plant is located in the 4400 block on Bienville Street, in the square bounded by North Alexander, North Murat and Conti streets, and the section from Bienville street north or away from Canal street is highly industrialized. A railroad passes in front of defendant’s establishment on Conti street. Defendant’s plant is worth well over a million dollars; plaintiffs’ residence about $20,000.00.
“It is not disputed that defendant under the City Zoning Law has a right to operate its plant because that side of Bienville street is zoned as industrial. At the same time, plaintiffs have the right to maintain their residence because it is located on the opposite side of Bienville street, [or in Alexander Street] zoned as ‘C’ residential. Plaintiffs’ residence and defendant’s manufacturing establish *685 ment have been in their respective locations for years.
“Defendant frankly admits that it operates at night time five nights a week, Monday through Friday, until midnight; and that its operation at night is not because of any public emergency, pressure or necessity, but only because it has private orders and is compelled to operate at night to get them out.
“The sole complaint of plaintiffs is that the noise which emanates from the plant disturbs them during the early and late hours of the night. No charge is made of the emission of obnoxious or offensive odor, dust, smoke, gas or vibration.
“It must first be conceded that both plaintiffs and defendant have a right to be where they are; the plaintiffs to reside on Bienville street [in Alexander Street], and the defendant to maintain its industrial establishment there [in Bienville Street]. Therefore, it necessarily follows that the plaintiffs cannot expect the defendant to turn day into night and, conversely, the defendant cannot expect to turn night into day.
"Even under the Zoning Law that permits the operation of this industrial plant, the defendant cannot use the same in any manner ‘which may be obnoxious or offensive by reason of emission o-f odor, dust, smoke, gas, or noise or vibration’.
"Necessarily, there is a conflict of testimony. Witnesses on behalf of the plaintiffs, residents in the neighborhood, complain that their sleep is disturbed by the noises. Defendant’s witnesses testified that the noises are not sufficient to annoy either them or persons of normal sensibilities. It is true the test is not what effect the noise would have on a neurotic, but the effect it has on a normal person.
“Mr. Todt, who lives across the street on Bienville, and who has been there for years, testified that he made no complaint before this because he didn’t want to interfere with an industrial enterprise creating an occasional annoyance, but since the noise now continues five nights a week until midnight, he cannot bear it.
“Plaintiffs produced and offered in evidence a record of a sound recording of the noises and sounds complained of which recording was made at night about 11:00 P.M. on October 26th, 1954, in a residence at 226 North Alexander street, about 200 feet away from the defendant’s plant. [226 No. Alexander Street is an apartment located in the building designated by the municipal number 228 No. Alexander Street.] Defendant objected to the admission of this recording on the grounds that it could easily have been amplified.
“After the technician who set up the apparatus for the recording and those who were present when the sound recording was made, and who heard the original noises, testified that the recording properly reproduced the original noises, I admitted the sound recording in evidence and had it played in the presence of all parties. The normal tones of the human voices speaking in explanation and narration of the sound recording were on a proper level with the noises and left no doubt that the sound recording should be admitted in evidence.
“The playback of the sound recording clearly proves that the noises complained of are weird, buzzing, humming and screeching sounds made by an instrument sawing metal, as well as loud, metallic sounds of metal beating metal, and similar noises.
*686 “A fact that stands out is the testimony of Mr. Walk, superintendent of the plant, who frankly admitted that a metal saw cutting- machine operates ten seconds every three to fifteen minutes, or forty seconds an hour, or three hundred twenty seconds a night, eight hours’ operation; that the sound emanating from the operation of the saw can be heard about two hundred feet away. It is not hard to appreciate that a shrieking, buzzing metallic sound made intermittently up to midnight, reverberating in a residential neighborhood, can annoy and awaken the residents in their relaxation and sleep and become a private nuisance.
“While plaintiffs have to put up with the normal use of defendant’s plant in the day time, it does, not follow that the defendant, for its own private purpose and gain, without any public interest involved, can continue the operation far into the night and deprive the plaintiffs of their right to the normal use of their property during the night.
“Excessive, unreasonable and disturbing noises, particularly during night hours, constitute a nuisance, to the abatement of which those disturbed are entitled to relief, even though noise is not necessarily a nuisance, and are not to be held so unless a consideration of all surrounding facts, such as character of locality and nature of noises and effect thereof on persons of ordinary sensibilities, have been determined. Beauvais v. Hall Transport, Inc. [La.App.], 49 So.2d 44; Ryan, et al. v. Louisiana Society for the Prevention of Cruelty to Animals [La.App.], 62 So.2d 296; Hobson, et ux. v. Walker [La.App.], 41 So.2d 789.
“There can be no denying that the defendant has a right to operate its plant at night if it wishes, but it cannot do so in a manner that unreasonably deprives residents of their right to enjoy their property. An occasional hammer blow, or a moving truck, or the clanging of metal occasionally, might not be sufficient to warrant complaint, but intermittent weird, buzzing and screeching noises up until midnight that reverberate in a residential neighborhood is certainly a noise that should be abated.
“The testimony discloses that large rolling doors are located at the entrance of the plant on Bienville street, and in the summertime when open permit the noise to reverberate in the neighborhood in a magnified manner; whereas, if the doors are closed, the noise is considerably subdued, possibly abated. Defendant contends that it can not close the doors for ventilation purposes, and to ventilate the plant in order to keep the doors closed would be economically prohibitive. If defendant cannot operate its business in keeping with the rights of others because it will not be economically sound to do so, even to handle extra business, that is a matter that concerns defendant, and the plaintiffs can not be compelled to subject themselves to a continuing nuisance because of the expense of abating or minimizing it.
“Considerable argument and stress is predicated by defendant on the fact that the section is industrial, and that the railroad track on Conti street requires the shifting and coupling of cars; that Bienville street is a heavy traffic street; that traffic on Canal street two blocks away can be heard, including the clanging of street cars; and counsel for the defendant stated that from his home in one of the exclusive residential sections of the city he can hear traffic crossing the Huey Long bridge crossing the Mississippi River five miles away. It is well settled that noises attending mat *687 ters of public convenience and necessity, common to all inhabitants of a community, which cannot be readily abated without injuring the public generally, cannot be likened to noises created by private business for private purposes not common to all and that can be abated.
“Since both plaintiffs and defendants have a right to use their respective properties in accordance with law, the plaintiffs to use theirs for residential purposes and the defendant for industrial purposes, each must use his property so as not to prevent the reasonable use by the other. To permit the defendant to continue emitting screeching, grinding noises intermittently at nighttime indefinitely five nights a week would deprive the plaintiffs of their right to use their property. R.C.C. LSA-C.C. arts. 668-669. Of course, the use of property in municipalities is governed by police regulation, but even a police regulation cannot permit one private owner to maintain a nuisance to the detriment of another. As a matter of fact, the Zoning Law itself prohibits in industrial localities obnoxious or offensive odors, dust, smoke, gas, noise or vibration.”
In the course of oral argument before this court counsel for the defendant again insisted that the trial court erred in permitting the plaintiff to introduce as evidence a recording of the various noises emanating from defendant’s plant as heard in the living room of an apartment in 228 N. Alexander Street on October 26, 1954, at about 11 p. m. This building is approximately 150 to 200 feet removed from the site of the plant. Counsel’s principal objection appears to be based on the hypothesis that the recording of the noises could have been amplified by the plaintiffs. An objection was made to the introduction of identical evidence[3] in a case decided by the Supreme Court of New York.[4] The organ of the Court expressed the opinion that the reproduction of sounds of an original event if material and when a proper foundation has been laid is admissible and that it amply substantiated the testimony of the witnesses who described the noises emanating from the defendant’s plant during the nighttime. We feel relatively certain that the trial court did not err in permitting the introduction of this evidence.
However, assuming arguendo that the trial court did err in admitting this evidence, a view which the defendant believes to be most favorable to his case, then we are of the opinion that the other evidence adduced herein preponderates in favor of the plaintiffs to the effect that noise which would not constitute a nuisance in the daytime will be declared such when created during hours usually devoted to relaxation and sleep by inhabitants of a neighborhood. The result which has been reached will approximately balance the rights of the respective parties.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. The defendant’s plant is located at 4401 Bienville Street approximately 150 to 200 feet removed from the plaintiffs’ residence.

. 1956, 229 La. 440, 86 So.2d 95.

. As in the instant case the proper foundation for the introduction of such evidence had been previously laid.

. Frank v. Cossitt Cement Products, Inc., 1950, 197 Misc. 670, 97 N.Y.S.2d 337; see Wigmore, Evidence, Sec. 795a (3rd ed. 1940).